**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| 1443 CHAPIN STREET, LP,<br><br>      Plaintiff/Counter-Defendant,<br><br>  v.<br><br>PNC BANK, N.A.,<br><br>      Defendant/Counter- and Third-Party<br>      Plaintiff,<br><br>  v.<br><br>STEVEN F. SCHWAT,<br><br>      Third-Party Defendant. |

Civil Action No. 08-1532 (CKK) (JMF)

**MEMORANDUM OPINION**
(September 14, 2011)

1443 Chapin Street, LP ("Chapin Street") is the would-be developer of a condominium project in the Northwest Quadrant of the District of Columbia. Several years ago, Chapin Street, Chapin Street's principal, Steven F. Schwat ("Schwat"), and PNC Bank, N.A. ("PNC") entered into a series of related agreements pursuant to which PNC would provide construction financing to Chapin Street in connection with the project. When PNC later cut off funding, Chapin Street commenced this breach of contract action against PNC in the Superior Court for the District of Columbia. PNC subsequently removed the action to this Court, where it has defended on the basis that it properly withheld funding because Chapin Street was in default of the underlying loan. PNC has also filed a Counterclaim against Chapin Street and a Third-Party Claim against Schwat, who executed a guaranty on the loan, through which PNC seeks to recover all amounts allegedly due and owing. Presently before the Court are the following eleven motions: PNC's

[107] Motion for Summary Judgment; Chapin Street and Schwat's [108] Motion for Summary

Judgment; Chapin Street and Schwat's [125] Motion for Leave to File Out-of-Time; and PNC's

[128], [129], [130], [131], [132], [133], [134], and [137] Motions to Strike.  Upon consideration

of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall

DENY PNC's [107] Motion for Summary Judgment; GRANT Chapin Street and Schwat's [108]

Motion for Summary Judgment; DENY Chapin Street and Schwat's [125] Motion for Leave to

File Out-of-Time; DENY PNC's [128], [129], [130], [131], [132], [133], [134], and [137]

Motions to Strike; and DISMISS PNC's [24] Counterclaim against Chapin Street and [24] Third-

Party Complaint against Schwat.[1]

## I.  BACKGROUND

The dispute at the heart of this action began with a $7.77 million construction loan

originally extended by PNC's predecessor to Chapin Street, a single purpose entity controlled by

Schwat.[2]  On December 30, 2005, the parties entered into the four central agreements governing

---

[1] In an exercise of its discretion, the Court finds that holding oral argument on the pending motions would not assist the Court in rendering its decision.  *See* LCvR 7(f).

[2] This factual background is derived from factual matters as to which there is or can be no genuine dispute.  While the motions pending before the Court are sharply contested, there is no material disagreement as to many of the underlying facts, often obviating the need to make specific references to the record.  The Court will reference the record primarily to highlight key facts and points of disagreement and contention.  In so doing, the Court shall cite to the parties' statements of material facts and, where appropriate, directly to the record.  In this regard, the Court notes that the parties have raised various objections as to the manner in which the other side has crafted its statements of material facts.  *See, e.g.*, PNC's Resp. to Chapin Street and Schwat's Stmt. of Material Facts ("PNC's MSJ$_{C/S}$ Resp. Stmt."), ECF No. [113], at 1-5.  True, the parties' submissions are not ideal, but many of those objections lack merit and almost all of them pertain to factual matters that are not germane to the bases for the Court's decision.  Suffice it to say, the Court has considered the parties' objections and sets forth herein only those factual matters as to which there is or can be no genuine dispute.

their relationship: (1) the Construction Loan Agreement; (2) the Deed of Trust and Security Agreement; (3) the Deed of Trust Note; and (4) the Guaranty of Payment and Performance (collectively, "Loan Documents").  *See* PNC's Stmt. of Material Facts ("PNC's MSJ$_{PNC}$ Stmt."), ECF No. [107], Exs. 5-8.  Both sides agree that the Loan Documents are valid and binding contracts requiring, *inter alia*, PNC to lend to Chapin Street, subject to certain conditions (including the absence of a default), monies to use in constructing a condominium project in the Northwest Quadrant of the District of Columbia.  Here, the locus of the parties' dispute is over which of them failed to perform under these agreements—or, more precisely, who *first* failed to perform under the agreements.

Through December 26, 2007, PNC funded sixteen separate draw requests from Chapin Street, advancing approximately half of PNC's total contractual funding obligations.  Chapin Street/Schwat's Stmt. of Material Facts ("Chapin Street/Schwat's MSJ$_{C/S}$ Stmt."), ECF No. [108-2], ¶ 104; PNC's MSJ$_{C/S}$ Resp. Stmt. ¶ 104.  PNC did not advance any funding beyond December 26, 2007.  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. ¶ 104;  PNC's MSJ$_{C/S}$ Resp. Stmt. ¶ 104.  Chapin Street submitted its seventeenth draw request on or about January 16, 2008.  PNC's MSJ$_{PNC}$ Stmt. ¶ 64.  On January 24, 2008, PNC refused to fund the request.  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. ¶ 117; PNC's MSJ$_{PNC}$ Stmt. ¶ 67.

On January 30, 2008, PNC sent Chapin Street a letter claiming that Chapin Street was in default ("January 30, 2008 Default Letter").  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. Ex. 78 (January 30, 2008 Default Letter).  In the letter, PNC (1) asserted its view that two "Events of Default," as defined under the applicable Loan Documents, had occurred, and (2) made it clear that it would not honor any draw requests going forward.  PNC wrote:

3

As you know, the Project is significantly behind schedule and over budget. As a result, [Chapin Street] has been and shall continue to be unable to comply with the draw conditions and timing requirements of Section 4.2 of the [Construction Loan] Agreement (regarding certifications in compliance with Section 5.3(b) of the Agreement, which constitutes a Default under the Agreement, seven (7) days after the date hereof. In addition, [PNC] has made a reasonable determination, in good faith, that the condition of the Project set forth above, impairs the prospect of payment and the performance of [Chapin Street's] obligations under the Agreement, which constitutes an Event of Default under Section 9(k)(iii) of the Deed of Trust Note executed in connection with the Agreement.

\* \* \*

We understand that [Chapin Street] is considering requesting the first of two extensions of the maturity date of [Chapin Street's] obligations to [PNC] under Section 2(c) of that certain $7,770,000 Deed of Trust Note . . . . This letter informs [Chapin Street] that [PNC] will not entertain any such requests while the above Defaults remain outstanding, and further, if [Chapin Street] seeks to force an extension to be granted during the current seven (7) day grace period, then [PNC] will demand full payment of all obligations immediately after the expiration of such seven (7) day period.

*Id.* at PNC568-60. It is undisputed that PNC's letter claims that Chapin was, as of January 30, 2008, in non-monetary default (that is, that Chapin Street had committed an Event of Default other than failing to pay the amounts due and owing on the loan). Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. ¶¶ 166, 204, 213; PNC's MSJ$_{C/S}$ Resp. Stmt. ¶¶ 166, 204, 213. PNC's January 30, 2008 Default Letter was reviewed by PNC's in-house counsel prior to being sent and was intended to assert all defaults known to PNC at the time. Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. ¶¶ 151, 153; PNC's MSJ$_{C/S}$ Resp. Stmt. ¶¶ 151, 153; Dep. of Michael Gormley, ECF No. [135-6], at 101-02.

On May 21, 2008, PNC sent two substantively identical letters, one to Chapin Street and one to Schwat, claiming, without further explanation, that "[t]he loan . . . is in default" and demanding full payment of the principal, accrued interest, late charges, attorneys' fees, collection

costs, and other sums it claimed were due and owing under the Loan Documents by no later than June 2, 2008 ("May 21, 2008 Default Letters").  PNC'S $MSJ_{PNC}$ Stmt. Ex. 23 (May 21, 2008 Default Letter to Chapin Street) at Chapin00513 & Ex. 24 (May 21, 2008 Default Letter to Schwat) at Chapin00449.

On June 13, 2008, slightly more than a week after the deadline stated by PNC had elapsed, PNC brought suit against Schwat in the Circuit Court for Baltimore County, Maryland ("Baltimore County Circuit Court") based on Schwat's status as the guarantor on the loan ("Baltimore County Action").  Chapin Street/Schwat's $MSJ_{C/S}$ Stmt. ¶ 1; PNC's $MSJ_{C/S}$ Resp. Stmt. ¶ 1.  In its Complaint in that action, PNC broadly asserted that (1) Chapin Street was "presently in default under the [Deed of Trust] Note" and (2) "[a]s a result of the defaults . . . , all amounts owed under the Note are immediately due and owing . . . ."  Chapin Street/Schwat's $MSJ_{C/S}$ Stmt. Ex. AA (PNC's Compl. in the Baltimore County Action) ¶¶ 8-9.  According to PNC, Chapin Street's "defaults" rendered Schwat liable under the Guaranty of Payment and Performance in his role as the guarantor on the loan.  *Id.* ¶¶ 10, 15.

Schwat filed an Answer to PNC's Complaint in the Baltimore County Action on October 2, 2008.[3]  Chapin Street/Schwat's $MSJ_{C/S}$ Stmt. ¶ 3; PNC's $MSJ_{C/S}$ Resp. Stmt. ¶ 3.  In his Answer, Schwat (1) denied PNC's allegations that Chapin Street was in default under the Loan Documents, and (2) countered that PNC had "wrongfully repudiated and breached" the Construction Loan Agreement.  Chapin/Schwat's $MSJ_{C/S}$ Stmt. Ex. BB (Schwat's Answer in the

---

[3]  In the interim, on August 3, 2008, Chapin Street commenced this action in the Superior Court for the District of Columbia.  PNC subsequently removed the action to this Court.  The two actions—the one before the Baltimore County Circuit Court and the one before this Court—proceeded along parallel paths until, as discussed more fully below, the Baltimore County Circuit Court entered a final judgment in that case.

Baltimore County Action) at 4-5.  More specifically, Schwat asserted a defense that PNC's claims against him were "barred because [of PNC's] prior breach and repudiation of the underlying loan documents excuse[d] performance by [Chapin Street] and thereby [him] as a matter of law." *Id.*

On December 8, 2008, PNC filed a Motion for Summary Judgment in the Baltimore County Action.  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. ¶ 4; PNC's MSJ$_{C/S}$ Resp. Stmt. ¶ 4.  In support, PNC argued that "Chapin defaulted on its obligations to PNC under the loan, which ha[d] matured and is due and payable."  Notice of Pl.'s Mot. for Summ. J. at 1, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Dec. 8, 2008).[4]  PNC conceded that Chapin Street had a contractual right to extend the maturity date of the loan from its original maturity date of December 30, 2007, but argued that Chapin Street's "two rights of extension . . . were conditioned on the loan not being in default."  Aff. of David A. Kennedy ¶ 3, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Dec. 8, 2008).  Referencing its January 30, 2008 Default Letter, PNC asserted that it had "declared a default under the material adverse change provision" on the basis that Chapin Street had allegedly "made little progress toward completing the improvements," "had fully exhausted the interest on the loan," and "for other [unspecified] reasons."  *Id.* ¶ 5 (emphasis added).  In other words, PNC argued that Chapin Street was in non-monetary default of the loan, just as it had in the January 30, 2008 Default Letter.  In addition, PNC argued that Chapin Street's attempt to exercise its right to extend the maturity date of the loan on January 29, 2008 was "ineffective[]," which in its view meant that

---

[4] Copies of PNC's Motion for Summary Judgment papers in the Baltimore County Action are available at ECF No. [32-8] in this case.

the loan had "matured in all events"—that is, PNC argued that the loan had matured and Chapin

Street was in monetary default regardless of whether it was non-monetary default.  *Id.*  Because

PNC has gone to lengths to gloss over this fact, the Court reiterates: PNC's Motion for Summary

Judgment in the Baltimore County Action was unambiguously predicated on two bases—namely,

"that the loan was both accelerated as a result of default and had matured in all events."  *Id.*; *see*

*also* Pl.'s Mem. in Supp of Pl.'s Mot. for Summ. J. at 2-3, *PNC Bank, N.A. v. Schwat*, Case No.

03-C-08-006454 (Balt. Cnty. Cir. Ct. Dec. 8, 2008) ("As of June 30, 2008, the loan was both

accelerated as a result of the default and had matured in all events.").

On January 13, 2009, Schwat filed his opposition to PNC's Motion for Summary

Judgment in the Baltimore County Action.  *See* Def. Steven F. Schwat's Mem. in Opp'n to Pl.

PNC's Mot. for Summ. J., *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty.

Cir. Ct. Jan. 13, 2009).[5]  Given the nature of PNC's arguments—specifically, its claims that

Chapin Street was in both monetary and non-monetary default of the loan—it is unsurprising that

the gravamen of Schwat's opposition was that there had been no default of any kind.  He wrote:

> Schwat is not liable to PNC because an essential prerequisite to such
> liability is proof of an actual default by the borrower, [Chapin Street].
> * * * Because [Chapin Street] has fully complied with each and every
> one of its obligations to PNC, and because payment is not due since
> PNC's acceleration of the loan was improper, PNC's motion must be
> denied.

*Id.* at 1-2.  As he did in his Answer, Schwat unequivocally stated that his defense would show (1)

that it was PNC, and not Chapin Street, that was in breach of the Loan Documents and (2) that

PNC's breach of its funding obligations to Chapin Street "long before . . . any possible legitimate

---

[5]  Copies of Schwat's opposition to PNC's Motion for Summary Judgment in the
Baltimore County Action are available at ECF No. [32-9] in this action.

allegation of default" excused Chapin Street's future performance under the Loan Documents. *Id.* at 7. Consistent with this statement of his defense, Schwat characterized one of the "key questions" for the Baltimore County Circuit Court as follows: "whether [Chapin Street] is in default of the loan." *Id.* at 6.

On February 2, 2009, the Baltimore County Circuit Court denied PNC's Motion for Summary Judgment in its entirety. *See* Mots. Ruling, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Feb. 2, 2009).[6] In so doing, the Court plainly expressed its agreement with Schwat that one of the key questions was whether Chapin Street had defaulted on the loan. The Baltimore County Circuit Court reasoned:

> Schwat is only liable on the guaranty if [Chapin Street] breached its agreement . . . . A world of difference exists as to the recollection of the facts between the parties and their respective views as to how the construction job was progressing in accord with contract responsibilities. There is more than one dispute of material fact.

*Id.* at 1. Despite the brevity of this explanation, there is no doubt that the Baltimore County Circuit Court's reference to "how the construction job was progressing" was a direct response to PNC's argument that Chapin Street "had made little progress" on the project. That is, the Baltimore County Circuit Court, quite reasonably, understood PNC to be litigating whether Chapin Street was in non-monetary default under the material adverse change clause in the Loan Documents and found that genuine disputes of material fact required a trial on the merits.

On February 22, 2010, on the eve of trial, PNC provided Schwat with a copy of its Pre-Trial Brief in the Baltimore County Action. *See* PNC's MSJ$_{C/S}$ Resp. Stmt. Ex. 4 (Trial Br. of

---

[6] A copy of the Baltimore County Circuit Court's decision denying PNC's Motion for Summary Judgment in that case is available at ECF No. [32-10] in this action.

PNC, Bank, N.A, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Feb. 22, 2009)).  As framed therein, PNC's principal argument at trial would be that Chapin Street failed to effectively exercise its right to extend the maturity date of the loan and was, therefore, in monetary default as of the original maturity date of December 30, 2007.  *Id.* at 4-5. PNC did not emphasize its argument (the one it had made in its Motion for Summary Judgment) that even assuming Chapin Street had effectively exercised its right of extension under the Loan Documents, the extension periods would nevertheless have elapsed by that point in time anyway and therefore Chapin Street would still be in monetary default.  But neither did PNC abandon the argument.  It its Pre-Trial Brief, PNC maintained that "[e]ven if [Chapin] had exercised both six month extension options, the loan would still have matured and be due and payable in full on December 30, 2008."  *Id.* at 3 n.1.

On February 23, 2010, Schwat presented the Baltimore County Circuit Court with his Statement of the Case.  *See* Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. Ex. GG (Def. Steven Schwat's Stmt. of the Case, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Feb. 23, 2009)).  Once again, Schwat reiterated his defense that it was PNC, and not Chapin Street, that first "committed a material breach of the loan agreements."  *Id.* at 1.  Thereafter, he posed a series of questions for the Baltimore County Circuit Court's consideration.  Included among them were (1) whether PNC breached its obligations under the Loan Documents by refusing to advance funding beginning with Chapin Street's seventeenth draw request on January 24, 2008 and (2) whether Chapin Street effectively exercised its right to extend the maturity date of the loan on January 29, 2008.  *Id.* at 3-4.

The Baltimore County Action proceeded to a full trial, held over three days from

9

February 23, 2010 to February 25, 2010.  At the conclusion of the evidence, the Baltimore

County Circuit Court posed the following question: "If PNC believed that the loan was over and

done with . . . and nothing could be done by Chapin Street to extend the loan after the date of

maturity, why did PNC send the January 30, 2008 [Default Letter] . . . if it believed the loan was

already in monetary default for failure to pay at maturity?"  Chapin Street/Schwat's Reply to

PNC's Resp. to Chapin Street/Schwat's Stmt. of Material Facts ("Chapin Street/Schwat's MSJ$_{C/S}$

Reply Stmt.") Ex. PP (Post Trial Br. of PNC Bank, N.A., *PNC Bank, N.A. v. Schwat*, Case No.

03-C-08-006454 (Balt. Cnty. Cir. Ct.)) at 6.  Before, during, and after the trial was held, PNC

consistently sought damages through the date of the trial.  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt.

¶¶ 27, 29; PNC's MSJ$_{C/S}$ Resp. Stmt. ¶¶ 27, 29.

In its Post-Trial Brief, PNC's leading argument remained that Chapin Street had failed to

effectively exercise the option to extend the maturity date of the loan and was therefore in

monetary default as of December 30, 2007.  Chapin Street/Schwat's MSJ$_{C/S}$ Reply Stmt. Ex. PP

(Post Trial Br. of PNC Bank, N.A., *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt.

Cnty. Cir. Ct.)) at 21.  PNC attempted to minimize the January 30, 2008 Default Letter, claiming

that the letter was "an irrelevant mistake" and "should have noted the default caused by the

failure to pay the loan on the maturity date, but it did not do so."  *Id.* at 20-21.  Nonetheless, as it

had throughout the Baltimore County Action, PNC did not rely on this argument alone.  Even at

this stage, PNC pursued its argument that Chapin Street would still be in monetary default even

if had effectively exercised its right to extend the maturity date.  PNC wrote:

> **Even if both extension options had effectively been exercised, the**
> **loan was still due and payable on December 30, 2008.**
>
> Although this case has focused on the maturity of the loan on

> December 30, 2007 and the issue of whether the extension option was exercised, one overriding fact should not be overlooked.  Even if Chapin Street exercised both options to extend, the loan would have matured on December 30, 2008.  All of the principal and interest would have been due on this date.

*Id.* at 27-28 (emphasis in original).  In other words, PNC argued that Chapin Street was in monetary default by no later than December 30, 2008, and plainly presented this as an alternative ground for the Baltimore County Circuit Court to find in its favor.  Further, while undeniably not emphasizing the point, PNC also claimed that Chapin Street was in non-monetary default under the material adverse change clause and presented this as yet another alternative ground for the Baltimore County Circuit Court to find in its favor.  PNC wrote:

> Although not emphasized during the trial, PNC had ample grounds to invoke the material adverse change provision.  * * *  PNC did not have a current financial statement for Schwat or any evidence that he could support the project shortfall.  And the project in two years had not progressed beyond a hole in the ground.  Even if a competent contractor could have finished the project in the next 12 month's [sic], there was no evidence that Chapin Street could have sold all of the units in time to pay the Bank by the extended maturity date or that CMS (Schwat's construction company) was at all competent to do so.

*Id.* at 19 n.5.

In the end, the Baltimore County Circuit Court ruled against PNC.  On July 2, 2010, it entered judgment in Schwat's favor.  PNC's MSJ$_{C/S}$ Resp. Stmt. Ex. 36 (Mem. Op. & Order of the Baltimore County Circuit Court).  In so doing, the Baltimore County Circuit Court concluded in a thorough written opinion that even though Chapin Street did not exercise its right to extend the maturity date of the loan until January 29, 2008, slightly less than a month after the original maturity date of December 30, 2007, Chapin Street's extension was nonetheless timely.  Specifically, after considering the Loan Documents and the surrounding facts and circumstances,

the Baltimore County Circuit Court ruled (1) "that the loan extension option could be exercised

for a reasonable time after the maturity date" and (2) that "Chapin's loan extension request . . .

should have resulted in the first six-month extension of the loan." *Id.* at 8.  The Baltimore

County Circuit Court concluded: "Judgment in favor of the Defendant." *Id.*

PNC has since appealed the Baltimore County Circuit Court's final judgment to the

Maryland Court of Special Appeals.  PNC's MSJ$_{C/S}$ Resp. Stmt. Ex. 37 (Notice of Appeal).  The

appeal remains pending.[7]  Joint Status Report (Sept. 6, 2011), ECF No. [144], at 1.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar

summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).  Nor may summary judgment be avoided based on just any disagreement as to the

relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible

evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to

specific parts of the record—including deposition testimony, documentary evidence, affidavits or

---

[7]  The parties agree that the judgment rendered by the Baltimore County Circuit Court nonetheless remains binding on this Court.  Under Maryland law, "the pendency of an appeal does not affect the finality of a judgment for res judicata purposes."  *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1041 (Md. Ct. Spec. App. 2004).

declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  FED. R. CIV. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

The Court's discussion here proceeds in three parts.  The Court shall first address the merits of Chapin Street and Schwat's [108] Motion for Summary Judgment, which turns in large part on the res judicata effect of the Baltimore County Circuit Court's final judgment.  *See infra* Part III.A.  Thereafter, the Court shall address PNC's [107] Motion for Summary Judgment, which, in light of the Court's decision with respect to Chapin Street and Schwat's Motion for Summary Judgment, requires little discussion.  *See infra* Part III.B.  Finally, the Court shall address Chapin Street and Schwat's [125] Motion for Leave to File Out-of-Time and PNC's [128], [129], [130], [131], [132], [133], [134], and [137] Motions to Strike, which again require little discussion in light of the Court's decision concerning Chapin Street and Schwat's Motion for Summary Judgment and PNC's Motion for Summary Judgment.  *See infra* Part III.C.

A.      *Chapin Street and Schwat's Motion for Summary Judgment*

Chapin Street and Schwat's [107] Motion for Summary Judgment is straightforward.  Distilling the motion to its essence, Chapin Street and Schwat argue that the preclusive effect of the Baltimore County Circuit Court's judgment is dispositive of the liability issues in this case.[8]

---

[8] Chapin Street and Schwat also argue that PNC is judicially estopped from disputing the preclusive effect of the Baltimore County Circuit Court's judgment based on the representations PNC has made to this Court regarding that judgment.  *See* Chapin Street/Schwat's Mem. in Supp. of Mot. for Summ. J. ("Chapin Street/Schwat's MSJ$_{C/S}$ Mem."), ECF No. [108-1], at 29-30.  Because there are other grounds for granting Chapin Street and Schwat's Motion for Summary Judgment, the Court shall assume, without deciding, that PNC is not judicially estopped from adopting its current position vis-à-vis the Baltimore County Circuit Court's judgment.  Nonetheless, the Court hastens to add that PNC's current position is, if not irreconcilable, at the very least in considerable tension with the representations it has made to this Court in the past.  *See, e.g.*, PNC's Opp'n to Mot. to Dismiss or Abstain, ECF No. [32-15], at 21 ("[W]hichever court—this Court or the Circuit Court for Baltimore County—ultimately issues a ruling on the merits will be *res judicata* on the issues before the other.").

14

In resolving the motion, the Court shall first address PNC's contention that Chapin Street and

Schwat's res judicata argument is not properly before the Court.  *See infra* Part III.A.1.

Thereafter, the Court shall address the merits of that argument.  *See infra* Part III.A.2.

### 1.  The Res Judicata Issue is Properly Before the Court

Preliminarily, the Court must address PNC's contention that Chapin Street and Schwat

have forfeited their right to pursue an argument based on res judicata in this case because they (1)

failed to affirmatively assert such a defense in their original pleadings and (2) failed to move to

supplement those pleadings after the Baltimore County Circuit Court rendered its final judgment.

*See* PNC's Opp'n to Mot. for Summ. J. of Chapin Street & Schwat ("PNC's MSJ$_{C/S}$ Opp'n"),

ECF No. [113], at 15-19.  For several reasons, the Court concludes that PNC's argument is

without merit.  Here, only three of those reasons need be discussed.[9]

### a.  PNC Has Misstated the Record

First, PNC fundamentally misstates the record.  Schwat's Answer to PNC's Third-Party

Complaint against him *unambiguously* asserts res judicata as an affirmative defense.  Indeed, it is

the first defense identified by Schwat on the very first page of his pleading:

---

[9]  Despite PNC's cursory argument to the contrary, *see* PNC's MSJ$_{C/S}$ Opp'n at 18 n.8, forfeiture, and not waiver, is the appropriate framework for evaluating whether Chapin Street and Schwat may pursue their argument based on res judicata.  Whereas forfeiture can arise "upon the failure to make the timely assertion of a right," waiver requires "an intentional and knowing" relinquishment of a right.  *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 426 (D.C. Cir. 2005).  In this case, PNC's argument turns upon the contention that Chapin Street and Schwat have failed to comply with certain procedural formalities in raising their res judicata argument; meanwhile, Chapin Street and Schwat have clearly and consistently maintained that the Baltimore County Circuit Court's final judgment bars PNC from securing relief in this action and requires judgment in their favor.

## FIRST DEFENSE

> The complaint is barred by the principles of *res judicata* in that the
> identical action has already been litigated to judgment between the
> identical parties in the Baltimore County Circuit Court case, <u>PNC
> Bank, National Association v. Steven F. Schwat</u>.

Answer of Third-Party Def. Steven F. Schwat, ECF No. [90], at 1 (emphasis in original).  The

statement could not be any clearer.  Yet inexplicably, PNC has completely elided over this fact in

the course of arguing that Chapin Street and Schwat have somehow forfeited their right to pursue

an argument based on res judicata in this case.  Simply put, PNC received formal notice that res

judicata was directly at issue in this action, at least with respect to Schwat, months before the

pending motions were filed.  PNC's statements to the contrary are meritless.

### b.      PNC Has Failed to Identify Any Cognizable Prejudice

Second, PNC's assertions of prejudice ring hollow.  True, Chapin Street filed its

Complaint in this case before the Baltimore County Circuit Court rendered its final judgment and

it did not seek to formally supplement its pleadings once the judgment was issued.  However, the

only prejudice PNC claims to have suffered as a result of this sequence of events has no

connection to Chapin Street's conduct in this case.  Instead, PNC maintains that it has been

prejudiced because it decided not to amend its *own* pleadings.  *See* PNC's MSJ$_{C/S}$ Opp'n at 17-

19.  Such "prejudice," to the extent it can even be characterized as such, is directly traceable to

PNC's own strategic decisions in this action; it has no meaningful nexus to what Chapin Street

has or has not done before this Court.

More to the point, it is simply beyond cavil that all the parties in this action have long

been sharply focused on the potential res judicata effect of the Baltimore County Circuit Court's

judgment.  Fifteen months before Chapin Street and Schwat filed their pending Motion for

Summary Judgment, PNC made the following argument to this Court:

> Should the Circuit Court for Baltimore County rule on the merits of PNC's claim against Schwat in February, 2010, the ruling would be *res judicata* as to Schwat and PNC in this Court.  The need to file a motion for summary as to Schwat in this Court may be eliminated.  Conversely, if a ruling on the merits is not obtained in February, 2010 as to Schwat's liability, then whichever court—this Court or the Circuit Court for Baltimore County— ultimately issues a ruling on the merits will be *res judicata* on the issues before the other.

PNC's Opp'n to Mot. to Dismiss or Abstain, ECF No. [32-15], at 21.  More than seven months before Chapin Street and Schwat filed their pending Motion for Summary Judgment, the Court made the following observation:

> As a practical matter . . . the parties have already agreed that any decision issued—whether by this Court or by the Baltimore County Circuit Court—will be binding on the relevant parties.

Mem. Op. (June 21, 2010), ECF No. [79], at 9.  These are but two examples from a well-documented history of the parties and the Court bringing their attention to bear on the potential res judicata effect of the Baltimore County Circuit Court's final judgment.  *See generally* Chapin Street/Schwat's Reply to PNC's Opp'n to Chapin Street/Schwat's Mot. for Summ. J, ECF No. [135], at 2-4 (identifying other examples).  The preclusive effect of that judgment has been a central issue—indeed, *the* central issue—in this action for quite some time.  PNC received formal and actual notice of this state of affairs long before Chapin Street and Schwat filed their pending Motion for Summary Judgment.  *Cf. Fed. Elec. Comm'n v. Nat'l Rifle Ass'n of Am.*, 254 F.3d 173, 189 (D.C. Cir. 2001) (concluding that defendant adequately raised an affirmative defense by filing an informal "notice of related decision" where the opposing party "had notice of the [defense], conducted discovery on the issue, and had ample opportunity to respond.").  PNC cannot credibly claim that it has been prejudiced now that Chapin Street and Schwat have raised

the issue in the manner that everyone, including the Court, always expected.[10]

>        c.        The Court Has and Shall Exercise Its Discretion to Reach the Issue

Third, and finally, it is well-established that "res judicata belongs to courts as well as to

litigants." *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997) (citations and

emphasis omitted).   Indeed, it has occasionally been suggested that the doctrine has a quasi-

jurisdictional character. *SBC Commcn's Inc. v. Fed. Commcn's Comm'n*, 407 F.3d 1223, 1230

(D.C. Cir. 2005).   Given the importance of the doctrine and its role in the orderly and efficacious

administration of justice, "even a party's forfeiture of the right to assert it . . . does not destroy a

court's ability to consider the issue sua sponte." *Stanton*, 127 F.3d at 77.   Seven months before

Chapin Street and Schwat filed their pending Motion for Summary Judgment, Schwat filed an

informal "notice of decision" advising the Court of the Baltimore County Circuit Court's final

judgment.   *See* Notice of Decision in the Circuit Court of Baltimore County Action, ECF No.

[86], at 1-2.   Shortly thereafter, this Court responded by directing the parties to address, *inter*

*alia*, "the effect of [the] ruling . . . on the ultimate merits issues raised in this lawsuit."   Order

(July 9, 2010), ECF No. [89], at 1.   Therefore, to the extent the parties had not already injected

the res judicata issue into this case, this Court unambiguously exercised its discretion to put it at

issue.   PNC has had ample opportunity to address the issue, and it has done so.   Accordingly, in a

---

[10] Parenthetically, the Court notes that PNC does not even appear to contend that Chapin Street and Schwat should be barred from pursuing their res judicata argument altogether.  Rather, PNC's position seems to be that the Court should deny Chapin Street and Schwat's Motion for Summary Judgment and "wait for a motion to amend."  PNC's MSJ$_{C/S}$ Opp'n at 16.  While Chapin Street could and *should have* formally supplemented its pleadings to reflect the Baltimore County Circuit Court's final judgment, for the reasons set forth elsewhere in this Memorandum Opinion, the Court concludes that its failure to do so does not preclude the Court from reaching the res judicata argument under the circumstances presented.

further exercise of its discretion, the Court shall reach the issue in the context of Chapin Street
and Schwat's pending Motion for Summary Judgment.

For the reasons set forth above, the Court finds that PNC's contention that Chapin Street
and Schwat have forfeited the right to pursue an argument based on res judicata is unavailing and
concludes that the issue is properly before the Court.  Therefore, the Court shall now turn to the
merits of the res judicata issue.

> 2. The Baltimore County Circuit Court's Final Judgment Is Dispositive of the Liability Issues in this Case

Federal courts must accord "full faith and credit" to the judgments of state courts.  28
U.S.C. § 1738.  That command means that state-court judgments must be given "the same
preclusive effect as would [be given by] the issuing court," *Stanton*, 127 F.3d at 77—in this case,
the Baltimore County Circuit Court.  Accordingly, the question of what impact the Baltimore
County Circuit Court's final judgment has on this action turns on the reach of res judicata under
Maryland law.  *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 n.3 (7th Cir. 2011).

Under Maryland law, the doctrine of res judicata provides that "'a judgment between the
same parties and their privies is a final bar to any other suit upon the same cause of action, and is
conclusive, not only as to all matters that have been decided in the original suit, but as to all
matters with which propriety could have been litigated in the first suit.'"  *MPC, Inc. v. Kenny*,
367 A.2d 486, 489 (Md. 1977) (quoting *Alvey v. Alvey*, 171 A.2d 92, 94 (1961)).  As described
by the Court of Appeals of Maryland, res judicata turns on a three-part test:

> The doctrine embodies three elements: (1) the parties in the present
> litigation are the same or in privity with the parties to the earlier
> litigation; (2) the claim presented in the current action is identical to
> that determined or that which could have been raised and determined
> in the prior litigation; and (3) there was a final judgment on the merits

in the prior litigation.

*R&D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008).

Here, only the third of these elements—"a final judgment on the merits"—is disputed. PNC concedes that the parties in this action are the same or in privity with the parties in the Baltimore County Action.  *See* PNC's MSJ$_{C/S}$ Opp'n at 19 ("Chapin Street/Schwat are correct that the parties, or those in privity with the parties, in the Baltimore County case and this case are the same.").  PNC also concedes that its "claim is the same in both cases."[11]  PNC's MSJ$_{C/S}$ Opp'n at 19.  Based on these explicit concessions,[12] the sole question for this Court is whether

_____

[11]  While PNC observes that Chapin Street's claim for "specific performance and ancillary damages . . . is different and was never before the Baltimore County Circuit Court," PNC's MSJ$_{C/S}$ Opp'n at 19-20, the parties are in agreement on this point, as evidenced by the fact that Chapin Street and Schwat have limited their Motion for Summary Judgment to the liability question, leaving the question of the appropriate remedy for another day.  In any event, the Court does not consider the Baltimore County Circuit Court's judgment to resolve the remedy question before this Court.  As set forth elsewhere in the Memorandum Opinion, *see infra* Part III.B, the Court concludes that it is premature to opine on the appropriate remedy and shall hold a Status Hearing with the parties to discuss proceedings pertaining to the remedy stage of this case.

[12]  Even absent these explicit concessions, the Court would conclude that PNC has otherwise conceded the first two elements of the res judicata inquiry.  In their opening memorandum, Chapin Street and Schwat provide exhaustive and compelling arguments as to why (1) the parties in this action are the same or in privity with the parties in the Baltimore County Action and (2) the claim presented in this action is identical to that determined or that which could have been raised and determined in the Baltimore County Action.  *See* Chapin Street/Schwat's MSJ$_{C/S}$ Mem. at 17-26.  As framed by PNC itself, PNC's opposition is limited to the third element—whether there is a "final judgment on the merits."  PNC's MSJ$_{C/S}$ Opp'n at 19-20.  In this Circuit, "it is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citation omitted), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *accord Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011).  Accordingly, in an exercise of its discretion, the Court shall treat Chapin Street and Schwat's arguments pertaining to the identity of the parties and the claims as conceded.

the Baltimore County Circuit Court's judgment is "a final judgment on the merits."  The Court

has no difficulty in answering that question in the affirmative.

PNC's argument is a strange one; it concedes that "[t]he Baltimore County case resulted

in a valid, final judgment," but claims that "the judgment was not on the merits."  PNC's MSJ$_{C/S}$

Opp'n at 20.  In this regard, PNC argues:

> The valid, final judgment was only that PNC's claim to recover the
> amount of its loan was premature, having been brought before the
> loan was due and payable.  The timely exercise of the extension
> option merely meant that PNC had sued to collect before the money
> was due . . . .

*Id.* at 20.  Citing a handful of authorities interpreting or applying the principles of § 20(2) of the

Restatement (Second) of Judgments,[13] PNC proceeds to argue that this Court should read the

Baltimore County Circuit Court's final judgment as nothing more than a statement that PNC sued

too early because the maturity date of the loan was yet to arrive.  According to PNC, all the

Baltimore County Circuit Court decided was that its suit was "premature" and, as a result, it is

not barred from seeking to recover now that the latest possible maturity date has already passed.[14]

---

[13]  That section provides:

> A valid and final personal judgment for the defendant, which rests on
> the prematurity of the action or on the plaintiff's failure to satisfy a
> precondition to suit, does not bar another action by the plaintiff
> instituted after the claim has matured, or the precondition has been
> satisfied, unless a second action is precluded by operation of the
> substantive law.

Restatement (Second) of Judgments § 20(2).

[14]  PNC tenders this argument even though it concedes that "[t]he arrival of the [latest possible] maturity date [had occurred] by the time trial began."  PNC's MSJ$_{C/S}$ Opp'n at 27.  In fact, it arrived before PNC's Motion for Summary Judgment in that action had been fully briefed, before the Baltimore County Circuit Court rendered its decision on that motion, before the parties

However, irrespective of whether or not PNC's argument rests on a correct statement of the law, its argument is without merit because the legal principles it recites simply have no applicability to the Baltimore County Action and the Baltimore County Circuit Court's final judgment.  The linchpin of PNC's argument—namely, that all that was litigated and decided in that case was whether or not PNC's claim was "premature—is false.  For the reasons set forth below, any one of which is sufficient to find in Chapin Street and Schwat's favor, the Court has no trouble concluding that the Baltimore County Circuit Court's final judgment was "on the merits."

First, it is notable that PNC never denies that the Baltimore County Circuit Court *could have* rendered a judgment on the merits.  PNC does not suggest, for example, that the Baltimore County Circuit Court lacked jurisdiction over the parties or the subject matter at issue.  *See Annapolis Urban Rewewal Auth. v. Interlink, Inc.*, 405 A.2d 313, 317 (Md. Ct. Spec. App. 1979) (noting that a "judgment on the merits" is "one which rules on the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form.") (internal quotation marks and citation omitted); *accord Vogel v. Boddie-Noell Enters., Inc.*, Civil. No. WDQ-11-0515, 2011 WL 3665022, at *2 (D. Md. Aug. 18, 2011).  Rather, PNC's argument is that the Baltimore County Circuit Court's judgment should be *construed* as more limited,

---

proceeded to a full trial on the merits, and before the Baltimore County Circuit Court issued its final judgment.  PNC suggests that this sequence of events is immaterial because the scope of its "claim" in the Baltimore County Action must be assessed at the time of the filing of its Complaint in that case.  *Id.* at 26.  The legal authorities cited by PNC in support of this argument are inapposite, and the Court finds the argument unpersuasive.  However, even crediting PNC's argument, as set more fully herein, the Baltimore County Circuit Court's judgment precludes PNC from relitigating the question of whether Chapin Street was in default of the Loan Documents up to and including the filing of PNC's Complaint in the Baltimore County Action on June 13, 2008.  By that point in time, PNC had already committed its own material breach of the Loan Documents, excusing any future performance by Chapin Street and Schwat.

confined to the narrow question of whether or not PNC's claim was "mature" and therefore ripe

for adjudication.  However, altogether ignored by PNC is the principle that where, as here, an

action is involuntarily dismissed by a court "without words of qualification," the dismissal is

generally "presumed to be . . . on the merits, and thus with prejudice."[15]  *Bodnar v. Brinsfield*,

483 A.2d 1290, 1297 (Md. Ct. Spec. App. 1984); *see also N. Am. Specialty Ins. Co. v. Boston*

*Med. Grp.*, 906 A.2d 1042, 1051-52 (Md. Ct. Spec. App. 2006).  PNC fails to identify anything

in the Baltimore County Circuit Court's judgment, or the circumstances of that judgment, that

would warrant overriding this presumption.  The Baltimore County Circuit Court issued a

thorough opinion after a full trial.  Therein, it unequivocally entered "[j]udgment in favor the

Defendant"—Schwat.  PNC's MSJ$_{C/S}$ Resp. Stmt. Ex. 36 (Mem. Op. & Order of the Baltimore

County Circuit Court) at 8.  Nothing in the opinion suggests that the Baltimore County Circuit

Court simply found PNC's claim to be "premature" or that it otherwise declined to dispose of the

action "on the merits."  In short, the presumption is that the Baltimore County Circuit Court

entered its judgment "on the merits" and PNC has failed to rebut that presumption.

    Second, even assuming, *arguendo*, that no such presumption applied in this case, PNC's

interpretation is fundamentally inconsistent with the plain language of the Baltimore County

Circuit Court's judgment.  The Baltimore County Circuit Court expressly found that Chapin

Street's attempts to exercise its option to extend the maturity date of the loan on January 29,

2008 "*should have* resulted in the first six-month extension of the loan."  *Id.* at 8 (emphasis

added).  Despite PNC's efforts to evade this language, it is clear: the Baltimore County Circuit

---

[15]  This contrasts with voluntary dismissals by the parties, which are generally presumed
to be without prejudice absent specification.  *See* MD. RULE 2-506(c).

Court found that Chapin Street was entitled to exercise its right to extend the maturity date of the loan on January 29, 2008.  The Baltimore County Circuit Court did not dismiss the action because PNC's claim was "premature."  It affirmatively found that Chapin Street was entitled to extend the maturity date of the loan.  Undoubtedly, this was a determination "on the merits."

Third, the Baltimore County Circuit Court's express ruling that Chapin Street's attempts to extend the maturity date of the loan on January 29, 2008 "*should have* resulted in the first six-month extension of the loan," PNC's MSJ$_{C/S}$ Resp. Stmt. Ex. 36 (Mem. Op. & Order of the Baltimore County Circuit Court) at 8 (emphasis added), necessarily included a finding that Chapin Street was not in default of the Loan Documents as of January 29, 2008.[16]  As PNC itself argued before the Baltimore County Circuit Court, Chapin Street's "rights of extension . . . were *conditioned on* the loan not being in default."  Aff. of David A. Kennedy ¶ 3, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Dec. 8, 2008) (emphasis added).  In other words, the Baltimore County Circuit Court necessarily decided that Chapin Street was not in default at the time it exercised its right to extend the maturity date on January 29, 2008.  It is undisputed that Schwat presented substantial evidence going to this precise issue to the Baltimore County Circuit Court, irrespective of PNC's repeated efforts to characterize Schwat's trial strategy as an "evidence dump."  PNC's MSJ$_{C/S}$ Opp'n at 10.  In short, the Baltimore County

---

[16]  The Court acknowledges that its discussion in this regard has some overlap with the questions relevant under the related doctrine of collateral estoppel, which Chapin Street and Schwat invoke as an alterative basis for ruling in their favor.  Here, the Court addresses the issues that were actually decided by the Baltimore County Circuit Court in order to show that the judgment was "on the merits."  Because the doctrine of res judicata precludes PNC from relitigating the question of whether Chapin Street was in default of the Loan Documents up to and including the filing of PNC's Complaint in the Baltimore County Action on June 13, 2008, the Court need not reach Chapin Street and Schwat's collateral estoppel argument.

Circuit Court necessarily found that Chapin Street was not in default as of January 29, 2008.

This too evidences that its judgment was "on the merits."

Fourth, PNC's current position that all that was litigated and decided in the Baltimore

County Action was whether or not PNC's claim was "premature" is belied by everything in the

record, including PNC's *own* position in that case. According to PNC:

> The only breach of contract upon which PNC sued in the Circuit
> Court for Baltimore County was Schwat's failure to pay on his
> guaranty after Chapin Street did not repay the loan in full on the
> December 30, 2007-maturity date.  No other defaults were litigated
> in that case.

PNC's MSJ$_{C/S}$ Opp'n at 28.  However, when PNC commenced that action, it broadly claimed that

Chapin Street was "in default" and had committed multiple "defaults."  Chapin Street/Schwat's

MSJ$_{C/S}$ Stmt. Ex. AA (PNC's Compl. in the Baltimore County Action) ¶¶ 8-9.  Regardless of

which theories it emphasized as the action progressed, the record is clear: before, during, and

after trial, PNC claimed that it was entitled to recover because Chapin Street was (1) in monetary

default as of the original maturity date of December 30, 2007; (2) in monetary default as of the

latest possible maturity date of December 30, 2008; and (3) in non-monetary default under the

"material adverse change" clause regardless of the maturity date.  *See* Pl.'s Mem. in Supp of Pl.'s

Mot. for Summ. J., *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct.

Dec. 8, 2008); Aff. of David A. Kennedy, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454

(Balt. Cnty. Cir. Ct. Dec. 8, 2008); Trial Br. of PNC, Bank, N.A, *PNC Bank, N.A. v. Schwat*,

Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Feb. 22, 2009); Post Trial Br. of PNC Bank,

N.A., *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct.)).  Meanwhile,

Schwat consistently defended on the basis that Chapin Street had not committed a default of any

kind and that it was PNC, not Chapin Street, that was in material breach of the Loan Documents. In resolving PNC's Motion for Summary Judgment, the Baltimore County Circuit Court quite reasonably understood PNC to be litigating whether Chapin Street was in non-monetary default under the material adverse change clause in the Loan Documents and found that genuine disputes of material fact required a trial on the merits.  *See* Mots. Ruling, *PNC Bank, N.A. v. Schwat*, Case No. 03-C-08-006454 (Balt. Cnty. Cir. Ct. Feb. 2, 2009).  Simply put, everything in the record belies PNC's *post hoc* and self-serving interpretation of the Baltimore County Action as limited to the narrow question of whether Chapin Street was in monetary default of the Loan Documents as of the original maturity date of December 30, 2007.  PNC's revisionist history of the case is utterly lacking in merit.

Fifth, even crediting PNC's untenable reading of the Baltimore County Circuit Court's final judgment, the result would be the same because PNC completely misapprehends the reach of res judicata.  Under Maryland law, the plaintiff's "claim" in the prior litigation is "merged into the judgment in the first suit."  *Chesley v. Goldstein & Baron, Chartered*, 806 A.2d 296, 306 (Md. Ct. Spec. App. 2002), *aff'd*, 825 A.2d 985 (Md. 2003).  In determining the scope of the "claim," the question is not only "what *was* decided in the original litigation but also what *could have* been decided in that original litigation."  *Id.* (citations omitted and emphasis altered).  By definition, the doctrine "foreclos[es] litigation of a matter that *never* has been litigated, because of a determination that it should have been advanced in an earlier suit."  *Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 237-38 (Md. 1987) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 (1984)) (emphasis added).  When PNC commenced the Baltimore County Action on June 13, 2008, it broadly claimed that Chapin Street was "in default" and had

committed multiple "defaults."  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. Ex. AA (PNC's Compl. in the Baltimore County Action) ¶¶ 8-9.  At the bare minimum, PNC was obligated to pursue any and all theories of relief of which it reasonably should have known at the commencement of the Baltimore County Action on June 13, 2008.[17]  PNC was not free to split its claims and litigate them successively in a separate action, which is precisely what it seeks to do here.  The doctrine of res judicata forbids such a result.

For the reasons set forth above, considered together or independently, the Court finds that PNC's contention that the Baltimore County Circuit Court's final judgment was not "on the merits" is without basis in law or fact.  The Baltimore County Circuit Court's judgment was final, binding, and on the merits.  Therefore, the three elements of res judicata are met in this case and the Court must afford the Baltimore County Circuit Court's judgment preclusive effect in the action now pending before this Court.  PNC was required to raise any and all theories that Chapin Street was in default at the time it commenced the Baltimore County Action on June 13, 2008.  Regardless of whether certain theories were raised or emphasized, they were extinguished when the Baltimore County Circuit Court entered judgment in Schwat's favor.  PNC is therefore precluded from relitigating in this action the question of whether Chapin Street was in default of the Loan Documents as of June 13, 2008.  Alternatively, because the Baltimore County Circuit Court's judgment included a finding that Chapin Street was not in default of the Loan Documents at the time it attempted to exercise its extension option on January 29, 2008, PNC is precluded from relitigating in this action the question of whether Chapin Street was in default of

---

[17]  By that point in time, PNC was already of the view that Chapin Street was in non-monetary default under the material adverse change clause in the Loan Documents.  *See* Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. Ex. 78 (January 30, 2008 Default Letter).

the Loan Documents as of January 29, 2008.

Regardless of which date the Court applies—January 29, 2008 or June 13, 2008—the Baltimore County Circuit Court's judgment is dispositive of the liability issues now before the Court.  Before either date had passed, PNC had already refused to honor Chapin Street's seventeenth draw request and had made it clear that it would not honor any draw requests going forward.  Chapin Street/Schwat's MSJ$_{C/S}$ Stmt. ¶ 104 & Ex. 78 (January 30, 2008 Default Letter); PNC's MSJ$_{C/S}$ Resp. Stmt. ¶ 104.  As a result, regardless of whether Chapin Street subsequently did or did not engage in conduct that hypothetically might have constituted a default under the Loan Documents, for purposes of this action there is but one conclusion available to the Court: PNC was the first to commit a material breach of the Loan Documents.  PNC's prior material breach excused Chapin Street and Schwat's subsequent performance as a matter of law.[18]  *See Final Analysis Commc'n Serv., Inc. v. General Dynamics Info. Servs.*, 253 F. App'x 307, 313 (4th Cir. 2007) ("It is well established that a material breach by one party to a contract excuses the other party from performance.") (citing *inter alia*, *Fromm Sales Co. v. Troy Sunshade Co.*, 159 A.2d 860 (Md. 1960)).

The foregoing analysis is dispositive of the liability issues in this case.  Accordingly, the Court shall GRANT Chapin Street and Schwat's [108] Motion for Summary Judgment and DISMISS PNC's [24] Counterclaim against Chapin Street and [24] Third-Party Complaint against Schwat.  All that remains for this Court to decide is the appropriate remedy for PNC's breach, which, as set forth more fully below, the Court finds is a question that should await

---

[18]  This does not necessarily mean that PNC is forever excused from repaying the amounts due on the loan.  If, for example, Chapin Street is entitled to specific performance, it will have to perform its side of the agreement.

28

further proceedings.

B.      *PNC's Motion for Summary Judgment*

The Court now turns to PNC's [107] Motion for Summary Judgment, which, in light of

the Court's decision concerning Chapin Street and Schwat's Motion for Summary Judgment, *see*

*supra* Part III.A, requires little discussion.  Succinctly stated, PNC crafted its motion on the

premise that the Court would conclude that the Baltimore County Circuit Court's final judgment

would not preclude PNC from now claiming that Chapin Street was in default of the loan before

PNC stopped performing its funding obligations.  *See* PNC's Mem. in Supp. of PNC's Mot. for

Summ. J as to Chapin Street and Schwat, ECF No. [107], at 1-5.  Because that premise has

proven to be incorrect, *see supra* Part III.A, PNC's Motion for Summary Judgment speaks to

claims and defenses that are no longer at issue in this action and shall be denied on that basis.

The lone exception to the foregoing observation pertains to PNC's contention that Chapin

Street is unable to show an entitlement to specific performance of loan agreement.  *See id.* at 19-

33; PNC's Reply to Chapin Street/Schwat's Opp'n to Mot. for Summ. J, ECF No. [127], at 19-

24.  As an initial matter, it appears to the Court that PNC's argument is predicated, in part, on a

mischaracterization of the remedies that Chapin Street is seeking in this case.  But that is an issue

for another day.  At this time, the Court considers it premature to address what remedies are

available to Chapin Street in connection with the pending Motions for Summary Judgment.  Now

that the underlying liability issues have been resolved, the parties should be prepared to turn their

attention to the remedy stage of this case.  To that end, the Court will set a Status Hearing to

discuss the contours of further proceedings.

For the reasons set forth above, PNC's [107] Motion for Summary Judgment shall be

DENIED, without prejudice to PNC's right to raise its arguments concerning the remedies available to Chapin Street at the appropriate time in this case.

> C.     *Chapin Street and Schwat's Motion for Leave to File Out-of-Time and PNC's Motions to Strike*

Similarly, Chapin Street and Schwat's [125] Motion for Leave to File Out-of-Time and PNC's [128], [129], [130], [131], [132], [133], [134], and [137] Motions to Strike require little discussion in light of the Court's decision concerning Chapin Street and Schwat's Motion for Summary Judgment and PNC's Motion for Summary Judgment.  *See supra* Parts III.A-B.  Each of these motions, with one exception, addresses the question of whether this Court should consider certain materials submitted by Chapin Street and Schwat in connection PNC's Motion for Summary Judgment.  Because that motion must be denied with or without reference to the materials in question, *see supra* Part III.B, PNC's Motions to Strike shall be denied as moot.

The sole exception to this observation is PNC's [137] Motion to Strike insofar as it asks this Court to strike Chapin Street and Schwat's [135-1] Reply Statement of Material Facts and the materials accompanying that statement, which is not moot because those materials relate to the merits of Chapin and Schwat's Motion for Summary Judgment.  But even here, PNC concedes, as it must, that nothing in the Local Rules of this Court "specifically prohibit[s]" such filings and admits that the decision of whether or not to allow them falls "within this Court's discretion."  PNC's Reply to Chapin Street/Schwat's Opp'n to Mot. to Strike Reply Stmt. of Material Facts, ECF No. [142], at 3.  Meanwhile, PNC does not claim that it has been deprived a meaningful opportunity to respond to an argument or issue raised by Chapin Street and Schwat in these materials (indeed, PNC posits that Chapin Street and Schwat do not even cite to the materials in their reply papers).  *Id.* at 4.  Under these circumstances, and upon consideration of

the record as a whole, the Court shall exercise its discretion in favor of considering PNC's

materials and, therefore, shall deny PNC's [137] Motion to Strike in this regard.  *See McFadden*

*v. Ballard, Spahr, Andrews & Ingersoll, LLP*, Civil Action No. 05-2401, 2008 WL 2569418, at

*1 (D.D.C.  June 24, 2008) (declining to strike a reply statement of facts, noting that Local Civil

Rule 7(h) "contains no prohibition against such a filing").[19]

 For the reasons set forth above, the Court shall DENY Chapin Street and Schwat's [125]

Motion for Leave to File Out-of-Time and PNC's [128], [129], [130], [131], [132], [133], [134],

and [137] Motions to Strike.

/

/

/

/

/

/

/

/

/

/

/

---

 [19]  Parenthetically, the Court adds that, to the extent it has referred to such materials in
this Memorandum Opinion, it has referenced them for purposes of clarifying rather than
expanding the record.  The substantive outcome of the parties' Motions for Summary Judgment
would be the same with or without the Court's consideration of the materials.

## IV.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that those arguments are either without merit or need not be reached in light of the grounds for the Court's decision.  Therefore, and for the reasons set forth above, the Court shall (a) DENY PNC's [107] Motion for Summary Judgment; (b) GRANT Chapin Street and Schwat's [108] Motion for Summary Judgment; (c) DENY Chapin Street and Schwat's [125] Motion for Leave to File Out-of-Time; and (d) DENY PNC's [128], [129], [130], [131], [132], [133], [134], and [137] Motions to Strike.  In light of these rulings, the Court shall DISMISS PNC's [24] Counterclaim against Chapin Street and [24] Third-Party Complaint against Schwat.  An appropriate Order accompanies this Memorandum Opinion.

Date: September 14, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge